UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

QUIANA LOVETT, #779728,

       Petitioner,

                                  Case No. 13-CV-12819

v.

                                  HON. MARK A. GOLDSMITH

MILLICENT WARREN,

       Respondent.
_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS (Dkt. 1), DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY AND DENYING PERMISSION FOR LEAVE TO APPEAL IN FORMA PAUPERIS**

## I. INTRODUCTION

Petitioner Quiana Lovett, currently confined at the Women's Huron Valley Correctional Facility in Ypsilanti, Michigan, filed a pro se petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Dkt. 1), in which she challenges her conviction of second-degree murder, Mich. Comp. Laws § 750.317. As a result of her conviction, Petitioner is currently serving a sentence of 16-to-30 years. The petition raises two claims: (i) the trial court erroneously admitted evidence regarding prior acts of domestic violence committed by Petitioner, and (ii) Petitioner's confession was involuntary. For the reasons stated below, the Court denies the petition for writ of habeas corpus. The Court also declines to issue a certificate of appealability, and denies permission for leave to appeal in forma pauperis.

## II. BACKGROUND

Petitioner was convicted following a jury trial in the Wayne County Circuit Court. The Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which

1

are presumed correct on habeas review, pursuant to 28 U.S.C. § 2254(e)(1). See Wagner v. Smith, 581 F.3d 410, 413 (6th Cir. 2009).

> Defendant's conviction arises from the February 20, 2010, fatal stabbing of her fiancé, Brian Woods, in their Detroit home. Evidence indicated that the couple was hosting a small gathering at their home when an argument erupted between Woods, his brother, and defendant. Woods asked everyone to leave his home, including his brother, who warned Woods to "watch out" because defendant had a knife in her hand. Thereafter, defendant and Woods argued about defendant's demeanor toward Woods's brother. According to defendant, the argument progressed to a physical altercation. Defendant testified that Woods choked her to the point that she could hardly breathe and that she grabbed a kitchen knife and stabbed him once in the chest in self-defense. A few hours after the incident, defendant gave a statement to the police in which she admitted to getting mad and stabbing Woods, but she did not mention that Woods had choked her or was physically aggressive in any manner.

People v. Lovett, No. 300454, 2012 WL 516054, at *1 (Mich. Ct. App. Feb. 16, 2012).

Following her conviction and sentence, Petitioner appealed by right, raising the following claims in the Michigan Court of Appeals:

    i.    The admission of a plethora of unfairly prejudicial evidence about other acts of domestic violence allegedly committed by Ms. Lovett deprived her of a fair trial, where the trial court neglected to conduct the required balancing under MRE 403.

    ii.    Due process was violated by the admission of Ms. Lovett's confession, which was involuntarily rendered just two hours after the traumatic event, while she was very intoxicated, and under the duress of the officer's coercive techniques.

Appeal at 25, 32 (cm/ecf pages) (Dkt. 6-15). The Michigan Court of Appeals affirmed Petitioner's conviction in an unpublished opinion. Lovett, 2012 WL 516054, at *5.

Petitioner subsequently filed an application for leave to appeal in the Michigan Supreme Court, raising the same claims as in the Michigan Court of Appeals (Dkt. 6-16). The Michigan

Supreme Court denied the application because it was not persuaded that the questions presented should be reviewed by the Court. People v. Lovett, 820 N.W.2d 802 (Mich. 2012).

### III.  STANDARD OF REVIEW

Title 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> > (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. Williams v. Taylor, 529 U.S. 362, 405-406 (2000). An "unreasonable application" occurs when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." Id. at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Id. at 411.

The Supreme Court has explained that a "federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." Miller-El v.

3

Cockrell, 537 U.S. 322, 340 (2003). Thus, the AEDPA "imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be given the benefit of the doubt." Renico v. Lett, 559 U.S. 766, 773 (2010) (quotation marks and citations omitted). A "state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." Harrington v. Richter, 131 S. Ct. 770, 786 (2011) (quotation marks). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. (citation omitted). Furthermore, pursuant to section 2254(d), "a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. Id. Habeas relief is not appropriate unless each ground that supported the state-court's decision is examined and found to be unreasonable under the AEDPA. See Wetzel v. Lambert, 132 S. Ct. 1195, 1199 (2012). "If this standard is difficult to meet, that is because it was meant to be." Harrington, 131 S. Ct. at 786.

Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from re-litigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents. Id. Indeed, section 2254(d) "reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." Id. (quotation marks omitted). Thus, a "readiness to attribute error [to a state court] is inconsistent with the presumption that state courts know and

4

follow the law." Woodford v. Viscotti, 537 U.S. 19, 24 (2002). Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state-court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington, 131 S. Ct. at 786-787.

## IV. ANALYSIS

### 1. Admission of Prior Bad Acts Evidence

Petitioner first contends that she was denied a fair trial by the introduction of evidence that she had committed prior acts of domestic violence against the victim. See Pet. at 4, 8 (cm/ecf pages). The Court finds that Petitioner is not entitled to habeas relief on this claim because it amounts to a state evidentiary claim that cannot be supported by clearly established Supreme Court law.

It is well established that habeas corpus is not available to remedy a state court's error in the application of state law. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) ("Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."). Thus, unless a violation of a state's evidentiary rule results in the denial of fundamental fairness, an issue concerning the admissibility of evidence does not rise to the level of a constitutional magnitude. See Cooper v. Sowders, 837 F.2d 284, 286 (6th Cir. 1988) (holding that "federal habeas corpus relief will be granted . . . where the violation of a state's evidentiary rule has resulted in the denial of fundamental fairness"); Davis v. Jabe, 824 F.2d 483, 487 (6th Cir. 1987) (noting "that in the absence of error that renders a trial fundamentally unfair, such as denial of the right to counsel or trial before a financially interested judge, a conviction should be affirmed where a reviewing court can find that the

5

record developed at trial established guilt beyond a reasonable doubt" (quotation marks omitted)).

"[A] federal habeas court has nothing whatsoever to do with reviewing a state court ruling on the admissibility of evidence under state law. State evidentiary law simply has no effect on [a court's] review of the constitutionality of a trial, unless it is asserted that the state law itself violates the Constitution." Pemberton v. Collins, 991 F.2d 1218, 1223 (5th Cir. 1993). As the Sixth Circuit has noted, "[e]rrors by a state court in the admission of evidence are not cognizable in habeas proceedings unless they so perniciously affect the prosecution of a criminal case as to deny the defendant the fundamental right to a fair trial." Kelly v. Withrow, 25 F.3d 363, 370 (6th Cir. 1994). In short, "[o]nly when the evidentiary ruling impinges on a specific constitutional protection or is so prejudicial that it amounts to a denial of due process may a federal court grant a habeas corpus remedy." Barrett v. Acevedo, 169 F.3d 1155, 1163 (8th Cir. 1999); see also Coleman v. Mitchell, 244 F.3d 533, 542 (6th Cir. 2001) ("A state court evidentiary ruling will be reviewed by a federal habeas court only if it were so fundamentally unfair as to violate the petitioner's due process rights."). Where a specific constitutional right — such as the right to confront witnesses or to present a defense — is not implicated, federal habeas relief is available only if the allegedly erroneously admitted evidence "is almost entirely unreliable and . . . the factfinder and the adversary system will not be competent to uncover, recognize, and take due account of its shortcomings." Barefoot v. Estelle, 463 U.S. 880, 899 (1983).

As noted above, the issue here is not whether this evidence was properly admitted under the Michigan Rules of Evidence, but rather whether Petitioner was denied a fair trial by the introduction of this evidence. This being the case, the Court finds that Petitioner is not entitled

6

to habeas relief even if the evidence was not properly admitted under Michigan Court Rule 404(b).[1]

Here, Petitioner was not denied a fair trial by admission of the evidence she now challenges. Both the Supreme Court and the Sixth Circuit have repeatedly held that a defendant is not denied a fair trial by the admission of prior bad acts evidence that is relevant in the defendant's trial. See Dowling v. United States, 493 U.S. 342, 353-354 (1990) (holding that prior bad acts evidence "was at least circumstantially valuable in proving petitioner's guilt"); Coleman, 268 F.3d at 439-440 (finding that the admission of prior bad acts, relevant to both the death penalty specifications course of conduct requirement and establishing a common scheme, did not violate due process); Pennington v. Lazaroff, 13 F. App'x 228, 232 (6th Cir. 2001) (per curiam) (holding that "the evidence of other misconduct was more probative than prejudicial, and its admission did not violate the due process clause"); Manning v. Rose, 507 F.2d 889, 893-895 (6th Cir. 1974) (finding no constitutional error where trial court admitted evidence of a prior robbery for the limited purpose of proving identity). And, in no uncertain terms, the Sixth Circuit has recognized that "[t]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence." Bugh v. Mitchell, 329 F.3d 496, 512 (6th Cir. 2003).

Accordingly, the Court concludes that Petitioner is not entitled to habeas relief on this claim.

---

[1] Mich. R. Evid. 404(b)(1) provides: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case."

### 2. Admission of Petitioner's Confession

Petitioner next asserts that her confession to a detective was involuntary and, therefore, inadmissible because her will was overborne by the coercive nature of the interrogation, and because she was still under the effects of alcohol. See Pet. at 6, 15 (cm/ecf pages). This claim lacks merit because the Michigan Court of Appeals reasonably rejected the claim on the merits.

The state court decided Petitioner's claims as follows:

> Defendant argues that the trial court erred in admitting her custodial statement because it was given shortly after a traumatic incident while she was still intoxicated and, therefore, was not knowingly, intelligently, and voluntarily made. We disagree.
>
> Statements of an accused made during a custodial interrogation are inadmissible unless the accused voluntarily, knowingly, and intelligently waives his or her Fifth Amendment rights. Miranda v. Arizona, 384 U.S. 436, 444 (1966); People v. Abraham, 234 Mich.App 640 (1999). Whether a defendant's statement was knowing, intelligent, and voluntary is a question of law that a court evaluates under the totality of the circumstances. People v. Tierney, 266 Mich.App 687, 707 (2005). The state bears the burden of proving by a preponderance of the evidence that the suspect properly waived his or her rights. See id. We defer to the trial court's assessment of the weight of the evidence and the credibility of the witnesses, and we will not disturb the trial court's findings of fact unless they are clearly erroneous. People v. Howard, 226 Mich.App 528, 543 (1997). A finding is clearly erroneous if it leaves the reviewing court with a definite and firm conviction that a mistake has been made. People v. Givans, 227 Mich.App 113, 119 (1997).
>
> A Miranda-waiver analysis is bifurcated as this Court considers (1) whether the waiver was voluntary and (2) whether the waiver was knowing and intelligent. People v. Daoud, 462 Mich. 621, 639 (2000); see also Tierney, 266 Mich.App at 707. "While the voluntariness prong is determined solely by examining police conduct, a statement made pursuant to police questioning may be suppressed in the absence of police coercion if the defendant was incapable of knowingly and intelligently waiving his constitutional rights." People v. Howard, 226 Mich.App 528, 538 (1997). In People v. Cipriano, 431 Mich. 315, 334 (1988), our Supreme Court

set forth the following nonexhaustive list of factors that a trial court should consider in determining whether a statement is voluntary:

> The age of the accused; his lack of education or his intelligence level; the extent of his previous experience with the police; the repeated and prolonged nature of the questioning; the length of the detention of the accused before he gave the statement in question; the lack of any advice to the accused of his constitutional rights; whether there was an unnecessary delay in bringing him before a magistrate before he gave the confession; whether the accused was injured, intoxicated or drugged, or in ill health when he gave the statement; whether the accused was deprived of food, sleep, or medical attention; whether the accused was physically abused; and whether the suspect was threatened with abuse.

No single factor is conclusive. Id.; People v. Fike, 228 Mich.App 178, 181–182 (1998). To establish that a waiver was knowing and intelligent, "the state must present evidence sufficient to demonstrate that the accused understood that he did not have to speak, that he had the right to the presence of counsel, and that the state could use what he said in a later trial against him." Tierney, 266 Mich.App at 709 (quotation omitted). A defendant need not understand the ramifications and consequences of waiving his right, as the test is not whether it was wise or smart for the defendant to admit culpability. Id. at 709–710. Rather, he "need only know of his available options and make a rational decision, not necessarily the best decision." Id. at 710.

Defendant did not testify about the circumstances surrounding her statement. After viewing a video recording of defendant's interview and also hearing testimony from the officer who conducted the interview, which the trial court found was credible, the trial court found that defendant knowingly, intelligently, and voluntarily waived her rights. Giving deference to the trial court's determination that the officer's testimony was credible, Howard, 226 Mich.App at 543, defendant has not demonstrated that the trial court's findings are clearly erroneous.

Although defendant had an unspecified amount of alcohol at least two hours before the interview, the officer testified that there was

> no indication that defendant lacked the capacity to understand the warnings given. The officer explained that defendant's gait appeared normal, she did not smell of alcohol, and her speech flowed normally. After the officer recited defendant's constitutional rights, defendant clearly reread each right back out loud. Defendant initialed each right at the appropriate place and signed the form indicating that she understood her rights. The 32–year–old defendant also asked relevant questions, appeared to fully understand the officer's questions during the interview, gave appropriate answers to the questions, and never expressed any misunderstanding or unwillingness to answer questions. When the officer questioned defendant about the circumstances of the incident, she coherently articulated a detailed account of her actions at the time of the incident, including the color of the knife. Viewing the totality of the circumstances, we find no clear error in the trial court's determination that defendant knowingly and intelligently waived her Fifth Amendment rights.
>
> With regard to the voluntariness of defendant's statement, the interview was conducted approximately three hours after the stabbing and lasted less than 1–1/2 hours. There is no evidence that defendant was threatened, abused, or promised anything in exchange for her statement. There is likewise no evidence that she was deprived of food or drink. Although defendant had earlier consumed alcohol, there is no indication that she was intoxicated to a degree that she was not operating of her own free will. Defendant was 32 years old and could read and write, and there is no indication that she had any learning disabilities or psychological problems. Viewing the totality of the circumstances, we are not convinced that a mistake was made in denying defendant's motion to suppress her statement.

Lovett, 2012 WL 516054, at *3-4.

As the state court correctly noted, the Fifth Amendment prohibits the prosecution's use of a criminal defendant's compelled testimony. Oregon v. Elstad, 470 U.S. 298, 306-07 (1985). The Due Process Clause of the Fourteenth Amendment likewise prohibits the admission at trial of coerced confessions obtained by means "so offensive to a civilized system of justice that they must be condemned." Miller v. Fenton, 474 U.S. 104, 109 (1985). "An admission is deemed to be coerced when the conduct of law enforcement officials is such as to overbear the accused's

10

will to resist." Ledbetter v. Edwards, 35 F.3d 1062, 1067 (6th Cir. 1994) (citing Beckwith v. United States, 425 U.S. 341, 347-348 (1976)). An involuntary confession may result from psychological, as well as physical, coercion or pressure by the police. Arizona v. Fulminante, 499 U.S. 279, 287 (1991) ("Our cases have made clear that a finding of coercion need not depend upon actual violence by a government agent; a credible threat is sufficient. As we have said, coercion can be mental as well as physical, and the blood of the accused is not the only hallmark of an unconstitutional inquisition" (quotation marks and ellipsis omitted)); Miranda v. Arizona, 384 U.S. 436, 448 (1966) ("Again we stress that the modern practice of in-custody interrogation is psychologically rather than physically oriented.").

In determining whether a confession is voluntary, the "ultimate question" for a court is "whether, under the totality of the circumstances, the challenged confession was obtained in a manner compatible with the requirements of the Constitution." Miller, 474 U.S. at 112. These circumstances include: (i) police coercion (a "crucial element"); (ii) the length of interrogation; (iii) the location of interrogation; (iv) the continuity of the interrogation; (v) the suspect's maturity; (vi) the suspect's education; (vii) the suspect's physical condition and mental health; and (viii) whether the suspect was advised of his or her Miranda Rights. Withrow v. Williams, 507 U.S. 680, 693-694 (1993). "All of the factors involved in the giving of the statement should be closely scrutinized." Walendzinski v. Renico, 354 F. Supp. 2d 752, 760 (E.D. Mich. 2005) (citing Culombe v. Connecticut, 367 U.S. 568, 602 (1961)).

Based upon the totality of the circumstances in this case, the Court finds that it was objectively reasonable for the Michigan Court of Appeals to hold that Petitioner's statement to the police was voluntary. See McCalvin v. Yukins, 444 F.3d 713, 720 (6th Cir. 2006). As part of the state-court record filed with the Court, Respondent submitted a videotape of Petitioner's

11

interview that was reviewed by the trial court and admitted at trial. See 1/29/2014 Notice (Dkt. 9); 2/3/2014 Notice (Dkt. 10).

The Court has reviewed the tape. Petitioner read her rights from the Miranda waiver form, appeared to sign the form, and agreed to speak with the detective. After obtaining biographical information, the officer asked an open-ended question about what happened earlier that evening. Petitioner then gave a long, uninterrupted narrative of events, and only began crying when she started describing her attempts to perform CPR on the victim. Petitioner's demeanor did not suggest that she was under the influence of any illicit drugs or alcohol. The questioning detective's manner, at least for the bulk of the interview, was even-tempered and conducted from a seated position diagonally from Petitioner.

After Petitioner's narrative, the detective did rise from her seat and accuse Petitioner of giving conflicting stories, and she did so in a loud voice. During this brief exchange, Petitioner defended her account of events. The detective then left the room, as Petitioner apparently had to use the restroom. Upon their return, the detective tried a different tact and empathized with Petitioner, urging her to tell the truth. When Petitioner began to cry, the detective embraced Petitioner, patted her on the back, and quietly urged her to get the truth off her chest. At that point, Petitioner confessed and admitted that she stabbed the victim.

Certainly, the circumstances of the interrogation became emotional. But the vast majority of the interrogation involved temperate questions followed by lengthy answers. The interrogation itself lasted a little more than an hour before Petitioner's confession, and, but for one short break, was continuous. The detective's one outburst was relatively brief and did not produce any incriminating statements. Petitioner was mature, could read and write, and she appeared to be in good physical condition. Though she was emotional at times, it did not appear

that Petitioner suffered from any serious mental health issues. She confessed freely while being hugged and being patted on the back by the officer. Therefore, the Court finds that the circumstances of the interrogation were not so overbearing so as to require the state courts to find the confession to be involuntary.

Accordingly, the Court concludes that Petitioner is not entitled to habeas relief on this claim.

### 3. Certificate of Appealability and Leave to Proceed In Forma Pauperis

Before Petitioner may appeal this Court's dispositive decision, a certificate of appealability must issue. See 28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. See Slack v. McDaniel, 529 U.S. 473, 484 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El, 537 U.S. at 327. In applying that standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the petitioner's claims. Id. at 336-337. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254; Castro v. United States, 310 F.3d 900, 901 (6th Cir. 2002).

Having considered the matter, the Court concludes that Petitioner has failed to make a substantial showing of the denial of a constitutional right. Accordingly, a certificate of

appealability is not warranted in this case. The Court also denies Petitioner leave to appeal in forma pauperis, because any appeal would be frivolous. See, e.g., Dell v. Straub, 194 F. Supp. 2d 629, 659 (E.D. Mich. 2002).

## V.  CONCLUSION

For the reasons set forth above, the Court denies the petition for writ of habeas corpus (Dkt. 1), declines to issue a certificate of appealability, and denies Petitioner leave to appeal in forma pauperis.

SO ORDERED.

Dated:  January 22, 2015             s/Mark A. Goldsmith
        Detroit, Michigan            MARK A. GOLDSMITH
                                     United States District Judge


## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on January 22, 2015.

                                     s/Johnetta M. Curry-Williams
                                     Case Manager